# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LIFE INSURANCE COMPANY OF THE SOUTHWEST,**

        **Plaintiff,**

**v.**                                      **Case No:   6:18-cv-2177-Orl-40KRS**

**JOSE FRAN BARRAGAN,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. No. 14)** |
| **FILED:** | **January 30, 2019** |

**I.    BACKGROUND.**

On December 28, 2018, Plaintiff Life Insurance Company of the Southwest filed a complaint against Defendant Jose Fran Barragan, seeking a declaratory judgment determining its obligations under a life insurance policy it issued to Defendant.  Doc. No. 7.  Specifically, Plaintiff asks the Court to issue an order declaring that Plaintiff effectively rescinded the life insurance policy and/or rescission of the policy by operation of the Court's judgment.  *Id.* ¶ 1.

Defendant was properly served with the complaint by personal service. Doc. No. 11.[1] Defendant did not answer or otherwise respond to the complaint. Upon motion, the Clerk of Court entered a default against Defendant on January 29, 2019. Doc. Nos. 12, 13. On January 30, 2019, Plaintiff moved for entry of a default judgment against Defendant. Doc. No. 14. The motion was referred to the undersigned for issuance of a Report and Recommendation, and the matter is ripe for review.

## II. STANDARD OF REVIEW.

"[A] defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *See id.* ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This analysis applies equally to motions

---

[1] The address on the return of service is the same as the address on Defendant's application for the life insurance policy and the address for Plaintiff listed in the complaint. *Compare* Doc. No. 11, *with* Doc. No. 7-1, *and* Doc. No. 7 ¶ 3.

for default judgment. *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (citations omitted).

A party seeking relief under the Declaratory Judgment Act, 28 U.S.C.§ 2201, must demonstrate "at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quoting *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)).

### III. ALLEGATIONS OF THE COMPLAINT.

Defendant is a Florida resident who applied for a life insurance policy from Plaintiff. Doc. No. 7 ¶¶ 3, 7. The policy had a face value of $125,000.00. *Id.* ¶ 4; *see* Doc. No. 7-3. On the application, Defendant agreed that "all answers given above and in any medical exam are to the best of my knowledge and belief complete and true. All such answers and this application shall be part of any contract issued." Doc. No. 7 ¶ 8 ; Doc. No. 7-1, at 6.

In connection with his application, Plaintiff was interviewed by a paramedic, who recorded his answers to certain questions on a medical questionnaire. Doc. No. 7 ¶ 9; *see* Doc. No. 7-2. By signing the questionnaire, Defendant confirmed:

> I have read the answers to the foregoing questions. They are correctly recorded and they are complete and true to the best of my knowledge and belief. They shall be used by the Company in any action it takes.

Doc. No. 7 ¶ 10; *see* Doc. No. 7-2, at 2.

On January 30, 2018, Defendant confirmed receipt of the policy, a life insurance guide and a buyer's guide. Doc. No. 7 ¶ 11. In the document, he confirmed that he "has had no change in health, occupation, or other circumstance that would require a change to any answer or statement

made in writing or orally in the process of applying for insurance identified by the policy number shown above." *Id.*

In reliance on Defendant's representations on the application and questionnaire, Plaintiff issued the life insurance policy to Defendant. *Id.* ¶ 12. The policy included an Accelerated Benefits Rider for Critical Illness, under which Defendant was afforded benefits during his lifetime under certain circumstances. *Id.* ¶ 14.; *see* Doc. No. 7-3, at 37. Defendant made a claim for benefits under the rider. Doc. No. 7 ¶ 14.

Plaintiff investigated Defendant's claim under the rider, during which it learned that Defendant had made material misrepresentations and omissions in the application and questionnaire. *Id.* ¶ 15. Defendant knew that the representations were false when he signed the application and questionnaire. *Id.* Plaintiff documents the misrepresentations and omissions on the application as follows:

a. Question 6 asks whether, in the past 10 years, Barragan had ever been diagnosed or treated by a licensed member of the medical profession or taken medication for (c) any digestive system disease, including among other things colon disorder. The stated answer is "no." The correct answer is "yes" because during this time period Barragan had hematochezia (blood in his stool) and was referred to a Gastroenterologist.

b. Question 6 asks whether, in the past 10 years, Barragan had ever been diagnosed or treated by a licensed member of the medical profession or taken medication for (e) among other things, any spine, back, rheumatism, or joints disorder. The stated answer is "no." The correct answer is "yes" because Barragan suffered and was treated for back pain and generalized joint pain and was referred to a Rheumatologist during this time period.

c. Question 11 asks whether, within the past 5 years, Barragan had: (a) consulted with a physician other than his personal physician or had x-rays, electrocardiograms, heart catheterization or other diagnostic tests, except those related to the Human Immunodeficiency Virus (AIDS Virus). The stated answer is "no." The correct answer is "yes" because during this time period he consulted with other physicians apart from his personal physician.

    d. Question 16 asks whether Barragan had ever been diagnosed with, consulted a medical professional for, or been treated or advised treatment for, among other things, numbness. The stated answer is "no." The correct answer is "yes" because after signing the Application but prior to his receipt of the Policy, he suffered from and was treated for numbness of both lower extremities.

*Id.* ¶ 17.   The misrepresentations and omissions on the questionnaire included:

    a. Question 7 asks whether, to the best of Barragan's knowledge, within the past 10 years, Barragan had received professional treatment or advice for disease or disorder of (c) esophagus, stomach, intestines, rectum, liver or gallbladder. The stated answer is "no." The correct answer is "yes" because he was experiencing blood in his stool during this time period.

    b. Question 7 asks whether, to the best of Barragan's knowledge, within the past 10 years, Barragan had received professional treatment or advice for disease or disorder of (g) among other things, the spine, muscles, joints, or skin. The stated answer is "no." The correct answer is "yes" because he suffered from the back and joint pain described above during this time, along with unspecified disturbances of skin sensation after signing the Application but prior to his receipt of the Policy.

    c. Question 8 asks whether, to the best of his knowledge, within the past 10 years Barragan had been advised by a physician or other medical professional that he had (b) among other things, back pain or back disorder. The stated answer is "no." The correct answer is "yes" because he suffered from and was treated for back pain during this time period.

    d. Question 13 asks whether, within the past 5 years, Barragan had consulted any physicians or other medical professionals other than his personal physician. The stated answer is "no." The correct answer is "yes" because, as described above, he consulted with other physicians and other medical professionals other than his personal physician during this time period.

    e. Question 16 asks for the name and address of Barragan's personal physician, the date last seen, and the reason consulted and outcome. The stated answer is that his personal physician was Jose Molina P.A. and that he last visited him one month prior for high blood pressure. However, Barragan also saw Jose Molina on that occasion for numbness of both lower extremities and for "unspecified disturbances of skin sensation," which he failed to report in response to Question 16.

*Id.* ¶ 18.

The misrepresentations and omissions were material to Plaintiff's issuance of the policy. *Id.* ¶ 20. Plaintiff alleges that it would not have issued the insurance policy with the rider if it had known that Defendant suffered from joint pain and numbness in his extremities and was referred to a rheumatologist; nor would Plaintiff have issued the policy had it had known that Defendant was referred to a gastroenterologist for evaluation of blood in his stool. *Id.* After Plaintiff discovered the misrepresentations and omissions, Plaintiff sent Defendant a letter rescinding the policy and tendering him a check for the amount of premiums Defendant paid under the policy plus interest. Doc. No. 7 ¶ 16; *see* Doc. No. 7-4.

Plaintiff seeks a declaration that the policy and the rider are void from inception and that Plaintiff effectively rescinded the policy. Doc. No. 7, at 8–9.

## IV. ANALYSIS.

In this diversity action, the Court must apply "the substantive law of the forum state." *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017) (quoting *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998)).[2] Under Florida law, a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under an insurance policy if:

> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

---

[2] The Court has subject matter jurisdiction based on the diversity of the parties. The amount in controversy is the face value of the life insurance policy that Plaintiff seeks to cancel. *See Guardian Life Ins. Co. of Am. v. Muniz*, 101 F.3d 93, 94 (11th Cir. 1996) (citing *New York Life Ins. Co. v. Swift*, 38 F.2d 175 (5th Cir. 1930)). Here, the face value of the policy is $125,000. Doc. No. 7 ¶ 4; *see* Doc. No. 7-3. The parties are also diverse. *See* Doc. No. 7 ¶ 2 (Plaintiff is Texas corporation with principal place of business in Texas); *id.* ¶ 3 (Plaintiff is domiciled in Florida and resides in Orlando).

Fla. Stat. § 627.409.

Thus, in Florida, "if an insured has made a misrepresentation in an application for insurance, and the insurer with full disclosure would not have issued a policy or would not have issued one under the same terms, then rescission of the policy by the insurer is proper." *USAA Life Ins. Co. v. Magana*, No. 5:17-cv-15-JSM-PRL, 2017 WL 1289846, at *2 (M.D. Fla. Apr. 4, 2017) (citation and quotation marks omitted). "Misrepresentations related to an insured's medical history or condition obviously affect an insurer's risk in issuing a life insurance policy and may be found to be material as a matter of law." *Mims v. Old Line Life Ins. Co. of Am.*, 46 F. Supp. 2d 1251, 1256 (M.D. Fla. 1999).

Here, the well pleaded allegations of the complaint demonstrate that Defendant made material misrepresentations and omissions in procuring the insurance policy and that Plaintiff relied on Defendant's misrepresentations in issuing the policy. Plaintiff has alleged that Defendant made material misrepresentations and omissions in the application and questionnaire and that Defendant knew that the representations were false when he signed these documents. Doc. No. 7 ¶¶ 15, 17, 18. These misrepresentations and omissions were related to Defendant's medical history or conditions. *Id.* ¶¶ 17, 18. Plaintiff alleges that had it known the true facts, it would not have issued the policy with the accelerated benefits rider, or it would not have issued the policy at all. *Id.* ¶ 20. Plaintiff also alleges that after it discovered the misrepresentations and omissions, it sent Defendant a letter rescinding the policy and tendering Defendant the amount of premiums paid. *Id.* ¶ 16.

By his default, Defendant has admitted the well-pleaded allegations of the complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Thus, I recommend that the Court grant Plaintiff's request for a declaration that the insurance policy, including the rider, was properly rescinded by

Plaintiff.  *See, e.g.*, *Magana*, 2017 WL 1289846, at *2–3; *Infinity Auto Ins. Co. v. Ortiz-Garcia*, No. 8:10-CV-1883, 2011 WL 69082, at *2 (M.D. Fla. Jan. 10, 2011).  Accordingly, I recommend that the Court enter a default declaratory judgment in favor of Plaintiff and against Defendant.

## V.   RECOMMENDATIONS.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

1. **GRANT** Plaintiff's Motion for Default Judgment (Doc. No. 14);
2. **FIND** that Plaintiff effectively rescinded the subject insurance policy and rider; and
3. **DIRECT** the Clerk of Court to issue a Judgment consistent with the Court's ruling on this Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 28, 2019.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy